**FILED**
**Aug 14, 2023**
**01:07 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**





# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **CARLOS M. JOHNSON,** | ) | **Docket No. 2022-07-0577** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | |
| **CORECIVIC, INC.** | ) | **State File No. 50191-2021** |
| **Employer,** | ) | |
| **And** | ) | |
| | ) | |
| **NEW HAMPSHIRE INS. CO.,** | ) | **Judge Robert Durham** |
| **Insurer.** | ) | |

---

## COMPENSATION ORDER GRANTING BENEFITS

---

The Court held a Compensation Hearing on August 3, 2023, to determine Mr. Johnson's permanent impairment for a left meniscus tear. Mr. Johnson argued the authorized physician's rating is too low because it does not account for arthritis that was caused or aggravated by the injury and resulting surgery.[1] The Court disagrees and adopts Dr. Ferguson's one-percent impairment rating.

### History of Claim

On June 29, 2021, Mr. Johnson, *age forty-two,* injured his left knee when he slipped on a kitchen floor at work. When conservative measures failed, an MRI revealed a lateral meniscus tear and chronic cartilage changes. CoreCivic authorized treatment with orthopedist Christopher Ferguson.

Dr. Ferguson saw Mr. Johnson on November 2, noting that he weighed over 300 pounds. He reviewed the MRI and agreed Mr. Johnson sustained a lateral medial meniscus

---

[1] The parties stipulated that Mr. Johnson suffered a compensable injury, his compensation rate is $622.69, he has returned to work for CoreCivic at his pre-injury wage, and the compensation period has expired. They also agreed that CoreCivic is entitled to a $967.86 credit for overpayment of temporary disability benefits.

1

tear caused by his fall.  He also diagnosed "chronic" patellofemoral arthritic changes that he believed preexisted the fall.

Dr. Ferguson surgically repaired the tear.  During the procedure, he saw that Mr. Johnson suffered from grade three and grade four chondromalacia in the patellofemoral compartment, so in some places he had no cartilage and the bone was fully exposed.  Dr. Ferguson repaired the arthritic changes through a chondroplasty that smoothed out the remaining frayed cartilage.

Once Mr. Johnson reached maximum medical improvement, Dr. Ferguson assessed a one-percent diagnosis-based anatomic impairment for the partial lateral meniscus tear using Table 16-3 of the American Medical Association Guides to the Assessment of Permanent Impairment, 6th edition.  He felt the tear was the only work-related injury and he did not assign an impairment for arthritis.

In his deposition, Dr. Ferguson addressed the causal connection between Mr. Johnson's fall and his knee arthritis.  He said that "the arthritic changes in the patellofemoral compartment are clearly, in my medical opinion, chronic and pre-existing to his work event."  He also said that Mr. Johnson's weight would make him more likely to develop degenerative arthritis in his knee.

On cross-examination, Dr. Ferguson agreed that the only reason that he performed the chondroplasty was because he was already in the knee to repair the meniscus.  However, he said that his job as a doctor is to "make the knee as good as [he] could make it," and it would not "make sense to fix part of the problem and leave the rest."  He disagreed that the lateral meniscectomy would aggravate the arthritis.

After receiving Dr. Ferguson's rating, Mr. Johnson's counsel sent him to Dr. Samuel Chung, D.O. for an independent medical evaluation.  Dr. Chung agreed that Mr. Johnson suffered a work-related lateral meniscus tear and that Dr. Ferguson appropriately performed surgery to repair it and smooth out the chondral defects.

After his exam, Dr. Chung also calculated an anatomical impairment under Table 16-3 of the AMA Guides, but he based it on arthritis rather than the meniscus tear.  Dr. Chung believed a five-percent rating was correct because "the particular injury as well as the surgical intervention, and subsequent led to the−the overall arthritic condition of the knee which has left him with a functional dysfunction at this time."

On cross-examination, Dr. Chung agreed that someone weighing as much as Mr. Johnson would be prone to joint damage.  However, he "highly doubt[ed]" Mr. Johnson suffered from preexisting joint problems and arthritis, given that he was only "*twenty-two years old*," which was "awful young."  (Emphasis added).  He did not feel arthritis would "set in that fast."  He also found it significant that Mr. Johnson said he did not suffer from

2

arthritic knee pain before his fall.

CoreCivic's counsel followed up by asking if Dr. Chung would be surprised to learn that Mr. Johnson suffered from preexisting arthritis. Dr. Chung said, "Once again, I—somebody who's 22 years old would not—I would not normally see them with osteoarthritis." However, he agreed it would be "less abnormal" to find that type of arthritis in someone older who weighed as much as Mr. Johnson. He said that Mr. Johnson's weight, as well as the surgery, significantly impacted the acceleration of osteoarthritis.

Dr. Chung conceded that Dr. Ferguson correctly used the impairment recommended by the AMA Guides for a meniscal tear. But he believed the impairment should be for arthritis instead because the surgery to smooth out the rough cartilage actually lessened the amount of cartilage in the joint, thus serving to create the arthritic condition. He disagreed with Dr. Ferguson's statement that Mr. Johnson suffered from preexisting arthritis; he said that Mr. Johnson suffered from chondromalacia, and the injury, in conjunction with the surgery, caused the patellofemoral arthritis, which now afflicts him. Still, he agreed that since Dr. Ferguson performed surgery, he would have been in the best place to see any preexisting arthritis.

Mr. Johnson's counsel asked on redirect if it would make any difference to Dr. Chung's opinion if Mr. Johnson was forty-two instead of twenty-two. Dr. Chung said it would not.

Mr. Johnson also testified as to his physical condition before and after his accident. He said that he did not have any problems with his knee beforehand. Now, he suffers significant limitations that affect his ability to climb stairs or stand for long periods of time.

During cross-examination, Mr. Johnson said that he has weighed between 240 and 300 pounds since high school. He admitted to taking arthritis medicine for several years before his surgery but said it was for his shoulder. Although he could not remember saying it, he did not dispute his personal doctor's notes that said he has suffered from pain in multiple joints for some years.

## Findings of Fact and Conclusions of Law

Mr. Johnson has the burden of proving the essential elements of his workers' compensation claim by a preponderance of the evidence. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, most of the issues in this case are not disputed. Here, the critical question is the degree of permanent impairment, which depends on whether the meniscus tear and resulting surgery primarily caused or aggravated the arthritis, thus making it compensable.

To prove causation, Mr. Johnson must show to a reasonable degree of medical

3

certainty that the injury or aggravation arose primarily out of his employment and "contributed more than fifty percent" in causing his disablement and need for treatment. Tenn. Code Ann. § 50-6-102(12)(A), (C) (2022). "Reasonable degree of medical certainty" means "it is more likely than not considering all causes, as opposed to speculation or possibility." *Id*. at -102(12)(D). Proving all this requires expert medical opinion. *Id*.

Here, two experts gave opinions on the cause for Mr. Johnson's disabling arthritis. When weighing expert opinions, the Court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Bass v. The Home Depot U.S.A, Inc.*, 2017 TN Wrk Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017). Also, since Dr. Ferguson is the authorized treating physician, his causation opinion is presumed correct, but it can be rebutted by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(12)(E).

In his deposition, Dr. Ferguson stated unequivocally that Mr. Johnson's patellofemoral compartment arthritis was chronic and pre-existed his meniscal tear. He said that his examination of the knee during surgery confirmed grade three and four arthritic changes, so it was bone-on-bone in many places. He confirmed that Mr. Johnson's weight was a significant factor in causing the degenerative changes. He also denied that the meniscectomy would have aggravated the arthritis.

Dr. Ferguson further said that the only reason he did the chondroplasty was because he was already in the knee to do the meniscal repair. He felt his duty was to "make the knee as good as [he] can make it," and it made little sense to leave the knee in that condition when he was already doing surgery on it. He confirmed that the one percent rating for the meniscal tear was the most accurate rating for the "work-related" component of Mr. Johnson's condition.

As for Dr. Chung, he did not believe the arthritis preexisted the meniscal tear. However, his testimony justifying this opinion was in large part based on the mistaken belief that Mr. Johnson was only twenty-two, and not his actual age of forty-two, at the time of his injury.

This was more than a "small typographical error," as Mr. Johnson's counsel attempted to characterize it. Dr. Chung repeatedly asserted that a significant factor he relied on in his decision was that it was unlikely that a twenty-two-year-old would have the level of arthritic changes found in Mr. Johnson's knee without some sort of inciting event, such as the accident and later surgery. This faulty premise undermines the credibility of Dr. Chung's opinion.

Mr. Johnson's counsel made some attempt at rehabilitation when he asked Dr.

4

Chung if the fact that Mr. Johnson was forty-two instead of twenty-two would change his opinion about causation, and Dr. Chung said it would not. However, this generic response is unpersuasive, given without explanation after Dr. Chung clearly said it was a factor during his earlier testimony.

Dr. Chung also justified his impairment for arthritis on the premise that the chondroplasty itself, which requires shaving the rough and frayed edges of the cartilage, thinned the cartilage level to less than two millimeters. Thus, he reasoned, the surgical procedure actually created the arthritis, making it compensable. Mr. Johnson argued this is an example of the "direct and natural consequences" rule, which says that "all the medical consequences and sequelae that flow from the primary injury are compensable." *Hudgins v. Global Personnel Solutions, Inc.,* 2023 TN Wrk. Comp. App. Bd. LEXIS 22, at *14, 15 (Apr. 26, 2023), *appeal docketed,* No. E2023-00792-SC-R3-WC (Tenn. Workers' Comp. Panel May 25, 2023). This position is undermined on two points.

First, Dr. Ferguson testified that when he scoped Mr. Johnson's knee, he saw firsthand that the cartilage in the patellofemoral compartment was nonexistent in many places and severely lessened in others. Thus, the cartilage levels were significantly decreased before the chondroplasty even occurred and were not due to the surgery.

Second, even if the chondroplasty did reduce the cartilage level to less than two millimeters, the procedure was to correct a condition that Dr. Ferguson did not believe was work-related, and which he said he only performed because he did not believe it was right to leave the knee in the condition it was in. If Dr. Ferguson's causation opinion is credited, the Court finds that the chondroplasty was not a direct and natural consequence of the work-related injury. Thus, any consequence from the surgery is not compensable.

Finally, Dr. Chung testified that the fact that Mr. Johnson did not suffer from any arthritic pain before his surgery showed the arthritis was caused or aggravated by the injury and surgery. Some question exists as to whether Mr. Johnson had arthritic knee pain before his injury. However, even assuming he did not, the Court holds that this factor alone is insufficient to rebut the presumption afforded to Dr. Ferguson's opinion that the arthritis preexisted the work injury.

On this record, the Court holds that Mr. Johnson did not offer sufficient evidence to overcome Dr. Ferguson's opinion that his arthritis preexisted his meniscal tear and was not caused or aggravated by his work injury or surgery. Thus, Mr. Johnson's impairment rating is limited to one percent based on the meniscal injury.

IT IS, THEREFORE, ORDERED:

1. CoreCivic shall pay Mr. Johnson an award of permanent partial disability benefits based on a one-percent impairment, which equates to $2,802.11 less an

overpayment of $967.86 in temporary disability benefits, for a lump sum award of $1,834.25.

2. Mr. Johnson's counsel shall receive an attorney's fee of twenty percent of the award, which equates to $560.42.

3. Dr. Christopher Ferguson shall remain Mr. Johnson's treating physician for his work-related lateral meniscus tear. CoreCivic shall pay for reasonable, necessary, and related medical treatment for this injury.

4. CoreCivic shall pay costs of $150.00 to the Court Clerk within five business days of this order.

5. CoreCivic shall prepare and file with the Court Clerk a Statistical Data Form within ten business days of this order becoming final.

6. Unless appealed, this order becomes final in thirty days.

**ENTERED August 14, 2023.**

_____

**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Mr. Johnson's Pre-Compensation Hearing Statement
4. Mr. Johnson's Pre-Trial Brief
5. CoreCivic's Witness and Exhibit List
6. CoreCivic's Pre-Trial Brief
7. CoreCivic's Pre-Compensation Hearing Statement

Exhibits:
1. Dr. Ferguson's deposition with attached exhibits
2. Dr. Chung's deposition with attached exhibits
3. Mr. Johnson's Notice of Filing Medical Records
4. CoreCivic's Notice of Filing Medical Records
5. Mr. Johnson's deposition

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on August 14, 2023.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Jeffrey P. Boyd | | | X | jboyd@borenandboyd.com scallison@borenandboyd.com |
| Vickie Moffett Cruzen | | | X | vmoffettcruzen@swlawpllc.com |

_____

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**

7



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____ ☐ Motion Order filed on _____

☐ Compensation Order filed on_____ ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*